UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANTHONY J. CURCIO,<br><br>Plaintiff,<br><br>v.<br><br>COLLECTORS UNIVERSE, INC. dba PROFESSIONAL SPORTS AUTHENTICATOR, GOLDIN AUCTIONS, LLC, ROXANNE GHEZZI, GREGORIO MARQUEZ, JACQUELINE CURIEL, and DOES 1-10,<br><br>Defendants. | CASE NO. 2:26-cv-01226-JHC<br><br>ORDER |

## I

## Introduction

This matter comes before the Court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or to Compel Arbitration. Dkt. # 7. The Court has considered the materials filed in support of and in opposition to the motion, the rest of the case file, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the motion, DISMISSES this matter without prejudice, and GRANTS Plaintiff leave to amend.

## II

## BACKGROUND

The factual background derives from the uncontroverted allegations in the Complaint, *see* Dkt. # 1-1, which the Court accepts as true on a Rule 12(b)(2) motion to dismiss. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (On a Rule 12(b)(6) motion, "uncontroverted allegations in the complaint must be taken as true.").

Plaintiff Anthony J. Curcio, a Washington resident, is a longtime collector and seller of graded trading cards. Dkt. # 1-1 at ¶¶ 2.1, 3.6. Defendant Collectors Universe, Inc. is a Delaware Corporation, with headquarters in California, that grades and authenticates cards under the trade name Professional Sports Authenticator (PSA).[1] *Id.* ¶2.2. PSA is a leading company in the card grading market, and grades cards by assessing whether they are authentic, and if so, assigns the card a numerical grade based on the card's quality and condition. *See* Dkt. # 7 at 9. Collectors owned Defendant Goldin Auctions, LLC, a Nevada based auction house that consigns and sells graded cards on behalf of customers. Dkt. # 1-1 at ¶ 2.3. Plaintiff identifies Defendants Jacqueline Curiel, Roxanne Ghezzi, and Gregorio Marquez (the Individual Defendants) as employees of Collectors. *Id.* ¶¶ 2.4-2.6.

In or around September and October 2022, Plaintiff submitted eight PSA-graded cards to PSA for its reholdering service, with a represented three-day turnaround.[2] *Id.* ¶ 3.50. Plaintiff received one of the cards around October 2022 and requested a status update on the remaining seven cards around November 8, 2022. *Id.* ¶ 3.52. Due to PSA's continued retention of the cards, Plaintiff notified the company that he intended to pursue legal action and publicly disclose

---

[1] Both sides refer to Defendant Collectors as PSA and this order does the same.

[2] According to Plaintiff, "a reholder submission is a service in which an already graded PSA card is encapsulated into PSA's most current tamper-resistant holder." Dkt. # 1-1 at ¶ 3.47.

PSA's practices if his property was not returned. *Id.* ¶¶ 3.54, 3.57. Plaintiff says that, just days after, Roxanne Ghezzi and Jackie Curiel contacted FBI agents and represented that Plaintiff was counterfeiting PSA products. *Id.* ¶¶ 3.58, 3.63. During the ensuing investigation, PSA continued to retain his cards and communicated to FBI agents that one of the cards was damaged. *Id.* ¶¶ 3.58, 3.60.

During this same time, Plaintiff and Goldin entered into a consignment agreement to sell Plaintiff's PSA-graded cards. *Id.* ¶ 3.89. In violation of the agreement, Goldin did not remit settlement proceeds to Plaintiff, provide a complete accounting report of the transaction, or provide tax related documentation once receiving payment for the sold cards. *Id.* ¶¶ 3.92-3.95. On December 21, 2022, Steven Lucas, Goldin's Vice President and Consignment Director contacted Plaintiff to solicit an additional high value PSA-graded card for sale. *Id.* ¶ 3.97. The next day, Collectors employee Roxanne Ghezzi reported to law enforcement that Goldin had sold two counterfeit cards consigned by Plaintiff. *Id.* ¶¶ 3.98, 3.121. These cards, along with the cards submitted for reholdering, were said to be counterfeit. *Id.* ¶ 3.102. Given these events, Collectors publicly branded Plaintiff's cards as counterfeit and hired a private investigator to investigate his activities at local card shows. *Id.* ¶¶ 3.87, 3.88, 3.111, 4.61.

Plaintiff then brought this lawsuit.

## III

## DISCUSSION

Defendants move to dismiss under Rule 12(b)(2), saying that this Court lacks personal jurisdiction over Defendants. Dkt. # 7 at 1.[3] They say that no Defendant is "at home" in

---

[3] In the alternative, Defendants move to compel arbitration under an agreement that "requires [Plaintiff] to arbitrate all claims and disputes that may arise between them." Dkt. # 7 at 1. But the Court need not address this because Plaintiff has not established personal jurisdiction over the Defendants.

Washington and thus subject to general jurisdiction, or "have sufficient suit-related contacts in this State for specific jurisdiction." *Id.* The Court agrees.

Under Federal Rules of Civil Procedure 12(b)(2), a defendant may move to dismiss a case if personal jurisdiction is lacking. "[T]he plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.,* 793 F.3d 1059, 1068 (9th Cir. 2015). Unless there has been an evidentiary hearing, the Court evaluates only whether the "pleadings and affidavits establish a prima facie showing of jurisdictional fact." *In re Boon Global Ltd.,* 923 F.3d 643, 650 (9th Cir. 2019). The plaintiff may not "simply rest on the bare allegations of [the] complaint[.]" *Schwarzenegger.,* 374 F.3d at 800. But "uncontroverted allegations in the complaint must be taken as true" and "[c]onflicts contained in affidavits must be resolved in the plaintiff's favor." *Id.*

As an initial matter, in briefing, Plaintiff repeatedly makes assertions beyond the allegations of the complaint. *See* Dkt. # 10; *see also* Dkt. # 11.[4] Defendants contend that the Court should refuse to consider these. Dkt. # 12 at 6-7; *see Schwarzenegger*, 374 F.3d at 800 (holding that a court need "only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction.") (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir.1995)). The Court agrees that Plaintiff improperly attempts to establish a prima facie showing primarily in briefing.

Due process requires that a non-resident defendant must have at least "minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional

[4] The Court notes that pro se pleadings must be "liberally construed" and held "to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011). Even so, "it is axiomatic that pro se litigants, whatever their ability level, are subject to the same procedural requirements as other litigants." *Muñoz v. United States*, 28 F.4th 973, 978 (9th Cir. 2022).

notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted). "A court's exercise of personal jurisdiction over a nonresident defendant may be either general or specific." *Doe v. Am. Nat. Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997). Plaintiff does not appear to argue general jurisdiction and thus the Court must determine only whether it has specific jurisdiction over Defendants.[5] *See* Opp. Dkt. # 11 at 10 ("Plaintiff does not rely principally on general jurisdiction.").

The Ninth Circuit applies a three-part test to determine whether a defendant has sufficient contacts with the forum state to subject it to specific personal jurisdiction: (1) the defendant must either purposefully direct activities toward the forum or purposefully avail the defendant of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (internal quotations and citation omitted). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802. If successful, "the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (internal quotation and citation omitted).

For the first prong, "purposeful direction" and "purposeful availment" encompass two distinct concepts. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023)

---

[5] In the complaint, Plaintiff appears to conflate general jurisdiction and specific jurisdiction. Dkt. # 1 at 3 ("Defendants purposefully avail themselves of the Washington marketplace and maintain continuous and systematic commercial contacts with the state[.]"). Plaintiff does not argue that any of the Defendants are "essentially at home." *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("A court may assert general jurisdiction over foreign corporations … when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State.").

(citing *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020)). Courts typically apply a purposeful availment analysis for suits sounding in contract and a purposeful direction analysis for suits sounding in tort. *Schwarzenegger*, 374 F.3d at 802. The Ninth Circuit, however, does "not impose a rigid dividing line" between these two types of claims. *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1088-89 (9th Cir. 2023) (quoting *Glob. Commodities*, 972 F.3d at 1107). "At bottom, both purposeful availment and purposeful direction ask whether defendants have voluntarily derived some benefit from their interstate activities such that they 'will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts.'" *Glob. Commodities,* 972 F.3d at 1107 (internal citation omitted).

Plaintiff asserts that specific jurisdiction exists over the Defendants through their business activities with Washington residents. Dkt # 1-1 at 3. Plaintiff must establish personal jurisdiction against each defendant individually. *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) ("Regardless of their joint liability, jurisdiction over each defendant must established separately."). Thus, the Court addresses each Defendant in turn, beginning with Collectors.[6]

A. PSA

1. Purposeful Direction and Availment

a. Purposeful Direction

Plaintiff appears to say that the purposeful direction standard is satisfied because PSA "regularly conducts business with residents of Washington[,]" including "grading and returning collectible cards by mail" to Washington residents. Dkt. # 1-1 at 3. Plaintiff cites *Herbal*

[6] Plaintiff does not clearly allege personal jurisdiction against each Defendant. Instead, Plaintiff frequently refers to the Defendants' collectively. *See, e.g.*, Dkt. # 1 ("Defendants' cracking of Plaintiff's Reholder submission necessarily required dismantling and separating PSA-issued components."). But because Defendants do not raise this issue, this order does not address it.

*Brands,* where the court held that purposeful direction can be established where "a defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the forum [State]." *See* Dkt. # 11 at 13-15; *Herbal Brands*, 72 F.4th at 1088. Defendants respond that Plaintiff does not allege that "Defendants sold and delivered physical products to Plaintiff in Washington via a website." Dkt. # 12 at 8.

The Court finds that Plaintiff has not sufficiently alleged or shown purposeful direction with respect to PSA's website. Plaintiff has neither alleged nor provided evidence that PSA delivered a physical product to Washington. Although Plaintiff says that PSA returned one of the cards he submitted for reholdering, it is unclear if it was delivered in Washington. *See* Dkt. # 1-1 at 12-13. Even if Plaintiff were a resident of Washington during this time, the Court is not inclined to assume where it was delivered. *Ranza*, 793 F.3d at 1068 ("the plaintiff bears the burden of establishing that jurisdiction is proper."). Further, the Court is unpersuaded that *Herbal Brands* applies here because Plaintiff does not show that he purchased a physical good from PSA. *See Herbal Brands*, 72 4th at 1095 ("[O]ur holding answers only the narrow question whether a defendant's sale of a physical product to a consumer in the forum state via an interactive website constitutes conduct expressly aimed at a forum."). Instead, Plaintiff says he submitted several cards to PSA for reholdering, which he characterizes as a service. *See e.g.*, Dkt. # 1-1 at 12 ("A reholder submission is a service in which an already graded PSA card is encapsulated into PSA's most current tamper-resistant holder.").

b. Purposeful Availment

Plaintiff says that PSA purposefully availed itself of Washington through (1) its interactive website, (1) investigative activities directed toward Plaintiff, (2) having a physical office in Seattle, and (3) advertisements for local events in Washington. Dkt. # 1-1 at 3; *see* Dkt. # 10 at 2-3. Defendants respond that Plaintiff "does not and cannot adequately allege" that

Defendants purposefully availed themselves of the privileges of conducting activities in Washington. Dkt. # 7 at 16.

As for the alleged investigative activity in Washington, the Court finds this does not establish purposeful availment. Plaintiff does not explain how investigative activity in Washington can serve as a basis for personal jurisdiction. *See generally* Dkt. # 1-1; *also* Dkt. #10 at 1-3. Other courts have addressed this issue with respect to patent-infringement claims, finding that investigative activity requires more than simply gathering information. *Compare R S Hughes Co., Inc. v. PCP Grp., Inc.*, No. 09 cv-4846-VRW, 2010 WL 11703642, at *6 (N.D. Cal. 2010) (finding no jurisdiction when the defendant hired an investigator to gather information in the forum state), *with Campbell Pet Co. v. Miale*, 542 F.3d 879, 887 (Fed Cir. 2008) (finding a prima facie showing of personal jurisdiction where "defendants took steps to interfere with the plaintiff's business by enlisting a third party to take action against the plaintiff.").

Here, the private investigative activity did not amount to more than mere information gathering. In email communications, Roxanne Ghezzi stated, "We've hired a private investigator" who would "likely attend the Twin Oaks card shows in Washington to see if [Plaintiff] … attend and attempt to sell counterfeits there." Dkt. # 1-1 at 85 (Exhibit H). But it is unclear if the investigator ever attended, and Plaintiff does not allege that any interaction occurred with a private investigator at a Washington card show. *See generally id*; *also* Dkt. # 10. Rather, Plaintiff states only that he "understands from records and information available . . . that" investigative activity concerning Plaintiff occurred in Washington. Dkt. # 10 at 3. Thus, this activity does not support a showing of purposeful availment.

As for (2) and (3), the Court finds that these activities establish purposeful availment. Plaintiff adduces uncontested evidence that PSA advertises local card show events and maintains

a physical office in Washington. *See* Dkt. # 10-1 (Exhibit A-B). These activities support that PSA purposefully availed itself to Washington. *See Sher*, 911 F.2d at 1362 ("Purposeful availment" requires that the defendant have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state."). Thus, the Court turns to the second prong of the specific jurisdiction analysis.

2. Arising out of or relating to forum-related contacts

Defendants contend that "Plaintiff does not even try to explain how his lawsuit 'arises out of or relates to [those] forum-related activities[.]'" Dkt. # 7 at 18 (quoting *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 520 (9th Cir. 1989)). The Court agrees.

The Complaint contains no allegation that any of the claims are premised on activity occurring at PSA's Seattle office. *See generally* Dkt. # 1-1. Nor does Plaintiff allege that his claims arise out of or relate to local PSA events. *Id.* Instead, Plaintiff states in his declaration that publicly available webpages show PSA's "Washington-facing commercial activity" that includes "Washington-accessible submission channels, dealer-location tools, event information, marketplace access, or other customer-facing services." Dkt. # 10 at 2-3. Plaintiff shows no apparent connection between these commercial activities and the claims he brings. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. 255, 256 (2017) (When there is no connection between the plaintiff's claim and Defendants forum-related contacts, "specific jurisdiction is lacking regardless of the extent of defendant's unconnected activities in the State."). Thus, the Court cannot find at this time that there is specific jurisdiction over PSA.

B. Individual Defendants

Plaintiff contends that the Individual Defendants established sufficient minimum contacts based on actions as "employees or agents of Defendant Collectors[.]" Dkt. # 1-1 at 3. Plaintiff

does not allege that any of the Individual Defendants have Washington contacts in their personal capacities. Thus, the Court construes the complaint to allege that the contacts of PSA should be imputed to the Individual Defendants.

"[U]nder the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Metro Productions, Inc.*, 885 F.2d at 520. But courts can exercise personal jurisdiction over a corporate officer where a plaintiff shows that the officer is personally liable for wrongdoing in the forum or if the corporation is the alter ego of the individual officer. *Id*. at 520-21. A "corporate officer or direction is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996). Thus, "a corporate officer's contact on behalf of a corporation is sufficient to subject the officer to personal jurisdiction where the officer 'is a primary participant in the alleged wrongdoing or had control of, and direct participation in the alleged activities.'" *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1120 (C.D. Cal. 2009); *see also Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016) ("[T]he actions of a corporate entity can be imputed to an individual officer who is the 'guiding spirit behind the wrongful conduct, or the central figure in the challenged corporate activity.'").

Here, Plaintiff does not allege that any of the Individual Defendants have contacts with Washington separate from PSA. Even if each Individual Defendant were the "guiding spirit" behind the alleged conduct, that assumption would impute to them only PSA's contacts. As stated above, the Court has already found that PSA's contacts do not arise out of or relate to Plaintiff's claims. Therefore, the Court need not consider whether it can impute PSA's contacts

to support specific jurisdiction over the Individual Defendants. Thus, the Court cannot find at this time that there is specific jurisdiction over the Individual Defendants.

C. Goldin

Plaintiff does not offer any argument as to why this Court has specific jurisdiction over Goldin. *See generally* Dkt. # 1-1. The complaint suggests that Goldin is subject to personal jurisdiction based on a consignment agreement with Plaintiff—a Washington resident. *See* Dkt. # 1-1 at 3, 17.[7] Defendants argue that a contract executed "while [Plaintiff] happened to reside in Washington" would not suffice to establish specific jurisdiction. Dkt. # 7 at 18. The Court agrees. "[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008). Instead, courts evaluate the parties "prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of dealing." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985).

Here, Plaintiff does not allege any facts or provide evidence supporting these factors. Plaintiff entered a consignment agreement with Goldin in which "Plaintiff submitted multiple PSA-graded cards to Goldin for consignment and sale" on their online auctions. Dkt. #1-1 at 18. Plaintiff does not say that prior negotiations took place in relation to the contract; nor do the terms of the contract involve Washington in any way. *See* Dkt. # 1-1 at 18-19 (Exhibit G1). Although Steve Lucas, Goldin's Vice President and Consignment Director emailed Plaintiff "to solicit an additional high value PSA-graded card for sale" this occurred after the contract and

---

[7] In the Complaint, Plaintiff alleges that "Defendants regularly conduct business with residents of Washington, including … facilitating secondary-market transactions[.]" Dkt # 1-1 at 4. The Court understands Plaintiff as referring to the consignment agreement with Goldin because the agreement is based on Golding performing secondary-market transactions,

was outside the agreement's scope.[8] *See id.* Even assuming this somehow continued the contract or might have led to another agreement, courts have held "the consummation of a contract stemming from phone calls and email communications with a forum resident is insufficient to create personal jurisdiction." *Casiano v. Predator Motorsports Inc.*, 2023 WL 6127720 (D. Ariz. Sept. 19, 2023) (citing *Gray & Co. v. Firstenberg Mach. Co., Inc.*, 913 F.2d 758, 761 (9th Cir. 1990). Thus, the only apparent link between Goldin and Washington is that it signed a contract with a Washington resident, which does not suffice to support specific jurisdiction. *See Boschetto*, 539 F.3d at 1019 (holding that a California court lacked personal jurisdiction over a defendant where a "one-time contract for the sale of a good that involved the forum state only because that is where the purchaser happened to reside"); *see also Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("The plaintiff cannot be the only link between the Defendant and the forum"). Thus, the Court cannot find at this time that there is specific jurisdiction over Goldin.

B. Leave to Amend

Federal Rule of Civil Procedure 15 provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed R. Civ. P. 15(a). And a court should not dismiss a pro se complaint without leave to amend unless, "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation omitted). "[A] pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Garity v. APWU Nat'l Lab. Org.*,

[8] Plaintiff and Goldin entered into the consignment agreement in October 2022 and on December 21, 2022, Steve Lucas reached out to Plaintiff to ask whether Plaintiff possessed a card that a potential buyer was looking for. Dkt. # 1-1 at 17-18.

828 F.3d 848 854 (9th Cir. 2016) (citation omitted). The Court cannot say that amendment would be futile and thus the Court grants leave to amend.

## IV
## CONCLUSION

For the above reasons, the Court GRANTS the motion, DISMISSES this matter without prejudice, and GRANTS Plaintiff leave to file an amended complaint within 14 days of this order

Dated this 22nd day of July, 2026.

John H. Chun

John H. Chun
United States District Judge